IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ENVIRONMENTAL ENERGY, INC.,

          Plaintiff,

vs.                         Case No. 15-4970-SAC-KGS

ALTIRAS FUELS, L.L.C.,

          Defendant.


**MEMORANDUM AND ORDER**

Plaintiff is a Kansas company which filed this action in Shawnee County, Kansas district court against defendant, a Texas company. Defendant removed the case to this court and has filed a motion to dismiss (Doc. No. 12) pursuant to FED.R.CIV.P. 12(b)(2), alleging a lack of personal jurisdiction. After considering the briefs filed by both sides, the court shall deny the motion to dismiss for the reasons explained as follows.[1]

I. MOTION TO DISMISS STANDARDS

---

[1] Plaintiff has asked for leave to file a surreply. Doc. No. 16. The purpose of the proposed surreply is to expand upon and, alternatively, request discovery concerning the issue of whether defendant's trucks traveled through Kansas as they journeyed to load and deliver the oil which was the subject of the contract now in dispute in this case. The court shall deny leave to file the surreply. The subject of the surreply was raised by plaintiff in the response to the motion to dismiss. Plaintiff had an adequate opportunity to make the points plaintiff wants to make in that pleading. The court finds that defendant did not raise a new issue in its reply brief so as to justify granting leave to file a surreply, and that no unusual circumstance warrants such permission. See King v. Knoll, 399 F.Supp.2d 1169, 1174 (D.Kan. 2005)(citing general rule that surreplies are permitted in rare circumstances such as when new arguments are improperly raised in a reply).

When a defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the burden shifts to plaintiff to make a prima facie showing of personal jurisdiction. AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1056-57 (10th Cir. 2008). A plaintiff may rely upon an affidavit or other written materials demonstrating facts that if true would support jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1091 (10th Cir. 1998). The court does not accept as true allegations in the complaint which are contradicted by a defendant's affidavits. Melea Ltd. v. Jawer SA, 511 F.3d 1060, 1065 (10th Cir. 2007). But, when evaluating whether plaintiff has stated a prima facie case, the court must resolve all factual disputes in plaintiff's favor. AST Sports Science, 514 F.3d at 1057. If the court conducted an evidentiary hearing upon defendant's motion, then plaintiff would be required to establish jurisdiction by a preponderance of the evidence. Richardson v. Fowler Envelope Co., 288 F.Supp.2d 1215, 1219 (D.Kan. 2003). But, since the court is proceeding without a hearing at this stage, the court is only concerned with whether plaintiff has made a prima facie showing of jurisdiction and whether the exercise of jurisdiction over defendant would be unreasonable.

II. EVIDENCE AND ALLEGATIONS BEFORE THE COURT

Plaintiff alleges that the parties entered a trade agreement on or about July 27, 2015, whereby defendant agreed to buy from plaintiff 800,000 gallons of fuel oil which defendant would collect from a tank in Grand Island, Nebraska. Plaintiff asserts that defendant removed 333,435 gallons of oil from the tank between July 27, 2015 and September 8, 2015, but thereafter notified plaintiff via email that defendant intended to stop the project. Plaintiff asserts that it billed defendant $93,361.80 for the fuel oil obtained by defendant. A total of ten invoices were mailed from plaintiff's office in Topeka, Kansas to defendant's office in Houston, Texas. The petition alleges that the agreement provided that payment would be remitted by defendant to plaintiff's office in Topeka. The petition further alleges that nothing has been paid by defendant on the contract.

In opposition to the motion to dismiss, plaintiff has submitted an affidavit from Adam Gray, the president of plaintiff. The affidavit states that defendant sent fuel trucks from Texas to obtain the oil from Grand Island and return to Texas, and that a total of 62 loads of fuel were hauled. Mr. Gray also states that on or about October 10, 2014, defendant purchased gasoline/diesel from plaintiff's tank in St. Louis, Missouri. That agreement, and the agreement at issue in this case, were negotiated through several emails and phone calls

3

between Mr. Gray and Mr. Marlon Williams, a sales executive for defendant.  Plaintiff mailed defendant invoices for the Missouri fuel and defendant sent payment to plaintiff in Kansas. According to the affidavit, the parties have contemplated other sales in 2014 and 2015 involving fuel located in Omaha and Lincoln, Nebraska and Chicago, Illinois.

Defendant has filed affidavits indicating that defendant's sole office is in Houston, Texas and that defendant has never conducted business, been registered to do business, owned property or operated an office in Kansas.  Doc. No. 13-1, p. 1. Defendant did not travel to Kansas to negotiate the agreement to purchase the oil stored at Grand Island, Nebraska.  Id. at p. 2. Nor did defendant travel to Kansas to perform any act regarding or relating to that agreement.  Id. at p. 3.  Also, defendant did not direct payment to plaintiff's office in Kansas for the oil defendant obtained in Nebraska.  Id.  Defendant hired a third-party transportation company located in Houston to send fuel trucks to Nebraska to retrieve the fuel.

III.  PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE THAT THE EXERCISE OF PERSONAL JURISDICTION CONFORMS WITH THE KANSAS LONG-ARM STATUTE AND THE CONSTITUTION.

A.  Plaintiff has asserted a prima facie case that jurisdiction complies with the Kansas long-arm statute.

Defendant's first argument for dismissal claims that no part of its agreement with plaintiff provided for performance in

4

Kansas and, therefore, that jurisdiction fails under the Kansas long-arm statute, K.S.A. 60-308(b)(E). That section of the statute provides that any person submits to the jurisdiction of this state by "entering into an express or implied contract, by mail or otherwise, with a resident of [Kansas] to be performed in whole or in part by either party in [Kansas]." The record before the court, construed in a light favorable to plaintiff, indicates that the parties entered an agreement which contemplated payments by defendant to plaintiff in Kansas as part of the performance.

This is sufficient to satisfy the requirements of K.S.A. 60-308(b)(E). In FDIC v. Culver, 640 F.Supp. 725, 727 (D.Kan. 1986), a Missouri defendant signed a promissory note obligating him to make payments to a Kansas bank. No payments were made. The receiver of the bank eventually brought suit against the defendant in Kansas. The court found that a prima facie case of jurisdiction under the long-arm statute had been made because the note provided that payments were to be made to the bank in Kansas. Here, we believe the facts alleged by plaintiff regarding the history of dealings and the invoices mailed by plaintiff demonstrate an implicit agreement that the parties' contract also would be performed in part in Kansas via the transmission of payments to Kansas after the receipt of invoices from Kansas. See also, Continental American Corp. v. Camera

Controls Corp., 692 F.2d 1309, 1312 (10th Cir. 1982)(receipt of payments in Kansas is circumstantial proof that parties agreed that some performance would be rendered in Kansas sufficient for long-arm statute); Marcus Food Co. v. Family Foods of Tallahassee, Inc., 729 F.Supp. 753, 757 (D.Kan. 1990)(requirement that plaintiff send invoices from Kansas and defendant make payment to Kansas satisfies long-arm statute).

   B. Plaintiff has asserted a prima facie case that jurisdiction complies with the Constitution.

   The next issue raised by defendant is whether this court may exercise jurisdiction over defendant consistent with the Constitution, specifically the Due Process Clause of the Fourteenth Amendment. See Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014)(noting that the Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts"). To defeat defendant's constitutional argument at this stage of the proceedings, plaintiff must present a prima facie case that defendant has sufficient minimum contacts with Kansas to support a claim of "specific jurisdiction" and the court must conclude that the exercise of personal jurisdiction over defendant would not offend traditional notions of fair play and substantial justice.[2] "Specific jurisdiction" over a nonresident

---

[2] Generally, when personal jurisdiction is contested, the question is whether there are sufficient minimum contacts by defendant with Kansas to support specific or general jurisdiction. Rockwood Select Asset Fund XI v. Devine, Millimet & Branch, 750 F.3d 1178, 1179 (10th Cir. 2014). General jurisdiction

defendant exists if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.   OMI Holdings, Inc., 149 F.3d at 1091.   The court must focus upon defendant's suit-related conduct and whether the contacts which defendant has created with Kansas are sufficient to satisfy the constitutional standard.   Walden, 134 S.Ct. at 1121-22.

Defendant contends that it did not purposefully direct its actions toward Kansas and that this litigation does not arise out of activities defendant directed toward Kansas.   The court holds, reading any disputed facts in a light most favorable to plaintiff, that plaintiff has presented a prima facie case to support a claim of personal jurisdiction.   Defendant admits that it used emails and telephone calls to contact plaintiff in Kansas more than once to negotiate a contract to purchase oil belonging to plaintiff.   The oil was held in Nebraska.   The contract apparently envisioned defendant making several payments to Kansas to satisfy invoices that would be sent from Kansas for the oil defendant would obtain from a tank in Nebraska.   For reasons which need not concern the court at this stage, defendant contacted plaintiff again in Kansas to indicate that

---

is based on a defendant's general business contacts with the forum state. Benton v. Cameco, Corp., 375 F.3d 1070, 1075 (10th Cir. 2004).   Here, plaintiff does not appear to claim general jurisdiction.

it would not pay plaintiff in Kansas for the oil it received pursuant to the contract and had delivered to Texas. Under these circumstances, it appears that defendant's purposeful, nonrandom connections with Kansas created the circumstances which led to this lawsuit.

When there are alleged contractual obligations involving a resident and a nonresident, the Supreme Court has stated that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)(interior quotation omitted). "Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." Id. at p. 476. Relevant factors for a court to consider include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of

dealing." Id. at p. 479. In Burger King, one of the relevant facts in a contractual dispute was the refusal, as in this case, of the nonresident defendant to make contractually required payment to the plaintiff in the forum state. Id. at 480. Another relevant fact was that when problems developed in the contractual relationship, as in the case at bar, the defendant channeled his communications to the plaintiff in the forum state. Id. at 481.

Defendant reached into Kansas to contact plaintiff. Defendant created a contractual relationship with plaintiff, a Kansas resident, while plaintiff was negotiating from Kansas. Consistent with the contract, plaintiff transmitted invoices from Kansas to defendant. The contract envisioned that defendant would perform its contractual obligations, in part, by making payments to Kansas. Finally, defendant continued to communicate into Kansas with plaintiff as the contract was in operation and as the envisioned performance in Kansas faltered. On this basis, the court finds that plaintiff has made a prima facie case that defendant had the required minimum contacts with Kansas to support the exercise of personal jurisdiction over defendant.

Consistent with this finding, the court notes the following cases: Continental American Corp., 692 F.2d at 1314 (Kansas court could exercise jurisdiction over a California purchaser of

balloons from a Kansas corporation, although the balloons were shipped from an Ohio factory, because payments were made to Kansas offices of the plaintiff and defendant availed itself of business contacts with plaintiff's Kansas office); <u>Yellow Transp., Inc. v. Apex Digital, Inc.</u>, 2006 WL 416224 *3-4 (D.Kan. 2/22/2006)(Kansas jurisdiction over California company based on contractual payments made to Kansas and account management occurring in Kansas even though contractual services had no connection to Kansas and negotiations occurred in California); <u>World Paper Resources, Inc. v. Buckeye Cellulose Corp.</u>, 1998 WL 928393 *4 (D.Kan. 10/6/1998)(Kansas jurisdiction over Tennessee company which communicated with Kansas company to create a contract although sales brokered by plaintiff for the Tennessee company under the contract at issue were executed outside Kansas); <u>American Energy Solutions, Inc. v. Stand Energy Corp.</u>, 1998 WL 229547 *1-2 (D. Kan. 4/13/1998)(Kansas jurisdiction over out-of-state company on basis of faxing proposed agreement to Kansas and sending payment to plaintiff's Kansas office); <u>Ford v. Tse</u>, 1997 WL 457522 *3 (D.Kan. 7/2/1997)(Kansas jurisdiction over California residents for payments on a note executed in Texas where payments and business correspondence had been made in Kansas); <u>Buford v. First Sunset Development, Inc.</u>, 1995 WL 396608 *4-5 (D.Kan. 6/9/1995)(jurisdiction in Kansas over Ohio corporation which negotiated via fax with Kansas resident

10

regarding sale by the Ohio corporation of land in Florida to the Kansas resident); Tantillo v. Friedes, 1989 WL 136568 *3-4 (D.Kan. 11/7/1989)(jurisdiction in Kansas over Florida apartment management company where services were to be performed in Florida with monthly reports and accountings to be sent to the Kansas plaintiff).

    C. Defendant has not carried its burden of showing that the exercise of jurisdiction would offend notions of fair play and substantial justice.

    The second step in our analysis is to determine whether the exercise of jurisdiction over defendant offends traditional notions of fair play and substantial justice. Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1167 (10th Cir. 2011). Plaintiff has made a prima facie showing of defendant's minimal contacts with Kansas such that defendant should reasonably expect to be haled into court in Kansas over the contract at issue in this case. So, defendant has the burden at this point to show that other considerations would render the exercise of jurisdiction unreasonable. Id. Five factors are normally considered: "'(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental

social policies.'" Id., quoting, Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1080 (10th Cir. 2008). If a plaintiff's showing of minimum contacts is weak, a defendant's showing of unreasonableness need not be as strong. Id.

### 1. Burden on the defendant

The Tenth Circuit has labeled this factor as "of primary concern in determining the reasonableness of personal jurisdiction." Newsome v. Gallacher, 722 F.3d 1257, 1273 (10th Cir. 2013)(quoting OMI Holdings, Inc., 149 F.3d at 1096)). In Newsome, the court determined that the exercise of personal jurisdiction by the district court in Oklahoma over Canadian corporate officers and directors who were domiciled in Canada was not particularly burdensome and did not weigh in the defendants' favor. Id. In AST Sports Science, Inc., 514 F.3d at 1061-62, the court found that it was not excessively burdensome to require a British company to litigate in Colorado where the company's president had traveled to the United States for business and pleasure and formerly lived in Colorado. Here, as plaintiff has noted, the record before the court does not portray defendant as a provincial business unaccustomed to interstate travel. In many cases, the courts are mindful that modern transportation and communication have lessened the burden of litigating in distant jurisdictions. E.g., Pro Axess, Inc.

v. Orlux Distribution, Inc., 428 F.3d 1270, 1280 (10th Cir. 2005).

Defendant asserts that some key witnesses in this litigation, including trucking company employees and end-purchaser personnel, reside in Texas and that it will increase the burden and expense to defendant to litigate this matter in Kansas.  The court is not persuaded by defendant's broad claims at this stage that there will be a significant problem or expense with obtaining the testimony of key witnesses or that defendant will have the bear the complete expense of obtaining the testimony of Texas witnesses.  Defendant has not made it clear who is a key witness and how difficult or expensive it will be to obtain that witness's testimony.  In addition, as the Tenth Circuit has commented, "in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road.'"  Dudnikov, 514 F.3d at 1081. After careful consideration, the Court finds that defendant has not established that it will be a substantial or unusual burden to litigate this case in Kansas.

### 2. Forum state's interest

The Tenth Circuit has recognized that "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." OMI Holdings, Inc., 149 F.3d at 1096.  Defendant is alleged to

have reached into Kansas to negotiate a contract with a Kansas company and to have failed to make payments to Kansas in accord with the contract. Kansas has an interest in litigating such disputes. The arguments defendant makes as to this factor merely ask the court to consider the other factors in the reasonableness analysis, which the court shall do. But, as for this factor, defendant's arguments do not rebut plaintiff's claim that the forum state's interest weighs in plaintiff's favor.

        3. <u>Plaintiff's interest in convenient and effective relief</u>

        The third step of the reasonableness inquiry concerns whether plaintiff may receive convenient and effective relief in another forum. This factor weighs most heavily in situations in which a plaintiff's chances of recovery are greatly diminished because of the laws of another forum or because the burden of litigating in another forum is such as to practically foreclose a recovery. <u>Id.</u> at 1097. Here, plaintiff alleges that it would be inconvenient to litigate this case in Texas because plaintiff's only office is in Kansas and key witnesses reside in Kansas and Nebraska. The court is not convinced, however, that these burdens are such that plaintiff would be foreclosed from obtaining relief if this case were litigated in Texas. Therefore, the court considers this a neutral factor. See

14

Hutton & Hutton Law Firm v. Girardi & Keese, 96 F.Supp.3d 1208, 1226 (D.Kan. 2015)(adjudging the factor as "neutral" under similar circumstances).

### 4. Most efficient resolution of the controversy

The fourth factor asks whether the forum state is the most efficient place to litigate the dispute. The "key to this inquiry is the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." OMI Holdings, Inc., 149 F.3d at 1097. Defendant claims that there are several witnesses in this case from Texas and only one witness from Kansas. Plaintiff contends that there are witnesses from Kansas and Nebraska and that Kansas law will likely govern this dispute.

There is no claim that piecemeal litigation is a danger regardless of the forum. Defendant has not made a clear showing that witnesses' convenience strongly favors a different forum because the identity of the witnesses needed by each side is not known. Also, it is not clear whether the witnesses' testimony can be secured via deposition. Finally, defendant has not established whether or not Kansas law will govern this action. In sum, defendant has not shown that this factor weighs against the exercise of jurisdiction in this forum.

5. Social policy interests

Whether the exercise of personal jurisdiction would have an effect upon the substantive social policy interests of other states or foreign nations is most often implicated when the interests of foreign nations are at stake.  See AST Sports Science, 514 F.3d at 1062-63.  This factor does not appear relevant to the court in the context of this case.

6. Conclusion

After reviewing the factors commonly applied to a reasonableness analysis, the court concludes that defendant has failed to carry its burden of showing that the exercise of jurisdiction over this controversy in Kansas would be so unreasonable as to offend the traditional notions of fair play and substantial justice.

IV. SUMMARY

Plaintiff has met its burden of demonstrating a prima facie case that defendant directed activities at Kansas from which this lawsuit arises.  Plaintiff has made an adequate showing that defendant's contacts with Kansas are sufficient to support the exercise of personal jurisdiction under the Kansas long-arm statute and the Constitution.  Defendant has not made a sufficient showing that the exercise of jurisdiction would be unreasonable or improper under the Due Process Clause.  Therefore, the court shall deny defendant's motion to dismiss

16

(Doc. No. 12).   The court also denies plaintiff's motion for leave to file a surreply (Doc. No. 16).

**IT IS SO ORDERED.**

Dated this 19th day of January, 2016, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

17